IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID SILER; DISTINCTIVE HUMAN      )
RESOURCES, INC.,                    )
                                    )
                Plaintiffs,         )
                                    )
        v.                          )        1:19CV403
                                    )
ELGA LEJARZA a/k/a ELGA             )
LEJARZA-PENN; MICHAEL PENN;         )
LEJARZA COMPLIANCE TRAININGS        )
LLC, a limited liability            )
company; LEJARZA HR CONSULTING      )
LLC, a limited liability            )
company,                            )
                                    )
                Defendants.         )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiffs David Siler and Distinctive Human Resources, Inc.
("Distinctive HR") bring this action against Defendants Elga
Lejarza a/k/a Elga Lejarza-Penn, Michael Penn, Lejarza Compliance
Trainings, LLC ("Compliance Trainings"), and Lejarza HR
Consulting, LLC ("HR Consulting") for their allegedly unlawful use
of Plaintiffs' copyrighted materials.   Before the court is
Defendants' motion to dismiss, pursuant to Federal Rule of Civil
Procedure 12(b)(6).  (Doc. 11.)  The motion is fully briefed (Docs.
17, 18) and is ready for decision.   For the reasons set forth
below, the motion will be granted in part and denied in part.

## I. BACKGROUND

The allegations of the complaint, along with the contents of documents of which the court takes judicial notice,[1] viewed in the light most favorable to Plaintiffs, show the following:

Siler is the controlling shareholder of Distinctive HR. (Doc. 1 ¶ 10.) Together, they produce study courses and materials ("Test Prep Materials") designed to help individuals pass a variety of human resources certification exams: the Professional in Human Resources (PHR) Certification Exam, the Senior Professional in Human Resources (SPHR) Certification Exam, the Associate Professional in Human Resources (aPHR) Certification Exam, and the Global Professional in Human Resources (GPHR) Certification Exam. (Id. ¶ 11.) The Test Prep Materials consist of print, audio, video, visual, and interactive materials, such as study guides, training games, sample tests, and flashcards. (Id. ¶¶ 11, 16-28.) Included with the Test Prep Materials is access to Plaintiffs' Learning Management System ("LMS"), an online platform with test prep content. (Id. ¶¶ 16, 18, 27-28.) Most of the component parts of the Test Prep Materials are registered with the United States

---

[1] The court may consider documents outside the pleadings without converting a motion to dismiss into one for summary judgment if those documents are "integral to and explicitly relied on in the complaint" and their authenticity is unchallenged. Copeland v. Bieber, 789 F.3d 484, 490 (4th Cir. 2015) (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999)). Plaintiffs have attached five documents to their brief that support their claims and are relied upon in their complaint (Docs. 1-1 through 1-5), and their authenticity is unchallenged.

Copyright Office.[2]  (Id. ¶ 33; Doc. 1-1.)

In April of 2011, Lejarza purchased Plaintiffs' PHR/SPHR audio CD and a one-year self-study online subscription.  (Id. ¶ 62.)  In March of 2016, she purchased the same two audio CDs and another one-year self-study online subscription. (Id. ¶ 63.)  In March of 2017, she purchased the 2017 PHR/SPHR self-study course bundle with a one-year self-study online subscription. (Id. ¶ 64.) And despite passing her human resources Certification exams prior to the start of 2018 (id. ¶ 67), in March of 2018 Lejarza purchased the 2018 PHR/SPHR self-study course with a one-year online subscription.  (Id. ¶ 65.)

Lejarza and Penn are business partners and owners of Defendants HR Consulting and Compliance Trainings.  (Doc. 1 ¶¶ 81-82, 158-64.)  Lejarza, either individually or through Compliance Trainings, "offers training workshops, seminars, webinars, classes, or similar training, educational, or promotional events" to help customers pass their human resources certification exams. (Id. ¶ 91.)  These live workshops are taught by Lejarza, but prerecorded materials are also available for purchase. (Id. ¶ 95.)

On or about July 25, 2018, Distinctive HR received notice

---

[2] Defendants note that of the thirty-two copyright registrations provided in Doc. 1-1, only two were registered prior to the termination of Defendant Lejarza's service.  (Doc. 13 at 6.)  However, to bring a copyright infringement claim, the works at issue simply must be registered prior to commencement of the suit, and not at the time of the alleged infringement.  17 U.S.C. § 411(a).

that Defendants were using the Test Prep Materials "word-for-word" in the slideshow presentations as part of Defendants' workshops and were including Plaintiffs' materials in their on-demand materials. (Id. ¶ 108-09.) Distinctive HR's software also recorded Lejarza accessing the self-study site thousands of times between May 18, 2017, and August 28, 2018, often with her actions overlapping in time. (Id. ¶¶ 70-76.)

The purchase page of Plaintiffs' Test Prep Materials provides customers this notice:

> [Learning Management System] access is for a single-user and is NOT transferable or to be shared with others. LMS access is valid for 1 year from the date your order is processed. A valid email address and individual's name must be provided for each [name of product ordered] ordered. All materials are copyrighted material and may not, in whole or in part, be copied, shared, or reproduced by any means for any reason without the prior written consent of Distinctive Human Resources, Inc. Any violation of these terms and conditions will result in immediate termination of your access to these materials, with no refund provided.

(Id. ¶ 69.) Plaintiffs allege that Lejarza not only reproduced their copyrighted material in her own workshops and on-demand materials, but that she also provided her login information to staff, volunteers, co-owners, or agents of Compliance Trainings and/or HR Consulting. (Id. ¶ 80.)

On August 27, 2018, Plaintiffs' counsel sent a cease and desist demand to Lejarza and Compliance Trainings, and Lejarza's self-study subscription was terminated on August 28, 2018, for

violations of the user license agreement. (Id. ¶¶ 66, 138.) According to Defendants, Lejarza has continued to infringe on Plaintiffs' copyrights following the cease and desist letter. (Id. ¶ 139.)

On April 15, 2019, Plaintiffs filed this lawsuit pursuant to 18 U.S.C. §§ 1331 and 1338(a), under the Copyright Act. (Doc. 1.) Based on Defendants' alleged misconduct, Plaintiffs bring five causes of action. Against each Defendant, Plaintiffs claim copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501; unfair competition under the Lanham Act, 15 U.S.C. § 1125; and common law copyright infringement and unfair and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1.1 et seq. (Id. at 22-24, 26-27, 28-32.) Against Lejarza individually, Plaintiffs allege breach of contract. (Id. at 24-25.) In lieu of answering, Defendants filed the present motion to dismiss, which is fully briefed and ready for decision.

## II. ANALYSIS

Plaintiffs assert, and the parties do not dispute, that the court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), under the Copyright Act. (Doc. 1 ¶ 7.) The court also has original jurisdiction over Plaintiffs' claim of unfair competition that is "joined with a substantial and related claim under the copyright . . . laws." 28 U.S.C. § 1338(b). The court

exercises supplemental jurisdiction over all other claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.

**A.    Standard of Review**

Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(6), arguing that Plaintiffs have failed to state a claim upon which relief can be granted. (Doc. 11.)  They assert that Plaintiffs' state law claims for breach of contract, unfair and deceptive trade practices, and common law copyright infringement are preempted by section 301 of the Copyright Act.   17 U.S.C. § 301.  (Doc. 13.)  They also move to dismiss Plaintiffs' unfair competition claim as duplicative of their copyright infringement claim.   (Id.)   Defendants Lejarza and Penn also assert that Plaintiffs' copyright infringement claim is not cognizable as to them individually because Plaintiffs have not alleged sufficient facts to pierce the corporate veil.  (Id.)

A motion to dismiss under Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

_Iqbal_, 556 U.S. 662, 678 (2009) (quoting _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007)).  In considering the motion, a court "must accept as true all of the factual allegations contained in the complaint," _Erickson v. Pardus_, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor, _Ibarra v. United States_, 120 F.3d 472, 474 (4th Cir. 1997).  "Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations 'to raise a right to relief above the speculative level' so as to 'nudge[] the[] claims across the line from conceivable to plausible.'" _Sauers v. Winston-Salem/Forsyth Cty. Bd. of Educ._, 179 F. Supp. 3d 544, 550 (M.D.N.C. 2016) (alterations in original) (quoting _Twombly_, 550 U.S. at 555).  Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." _Iqbal_, 556 U.S. at 678.

## B.  Copyright Infringement

In their first cause of action, Plaintiffs assert that they own the copyrights for their Test Prep Materials, which are registered with the United States Copyright Office.  (Doc. 1 at 22.)  Attached to their complaint are the certificates of registration from the Copyright Office.  (Doc. 1-1.)  Plaintiffs allege that Defendants, without permission or authorization, copied Plaintiffs' Test Prep Materials in a "willful, intentional,

and purposeful [way], in disregard of and with indifference to Plaintiffs' rights." (Doc. 1 at 22-23.) Defendants do not contest that Plaintiffs have sufficiently pleaded a copyright infringement claim but instead move to dismiss the claims against Lejarza and Penn in their individual capacities, claiming that "the dispute is really between the Plaintiffs and the corporate Defendants." (Doc. 13 at 13.) Defendants argue that the factual allegations do not support piercing the corporate veil as to Compliance Trainings and HR Consulting. (Doc. 18 at 4-5.) Plaintiffs respond that "[p]iercing the LLC or Corporate Veil is not the only way an individual can be liable in a lawsuit" and further argue that they have "made numerous claims" against both Lejarza and Penn individually. (Doc. 17 at 10.)

"To establish a claim for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., a plaintiff must prove that it possesses a valid copyright and that the defendant copied elements of its work that are original and protectable." Copeland v. Bieber, 789 F.3d 484, 488 (4th Cir. 2015). A defendant may infringe a copyright either directly, contributorily, or vicariously. Live Face on Web, LLC v. Absonutrix, LLC, No. 1:17cv937, 2018 WL 2121627, at *2 (M.D.N.C. May 8, 2018). "Direct infringement of a copyright 'requires *conduct* by a person who causes in some meaningful way an infringement.'" Id. (quoting CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 549 (4th Cir.

2004) (emphasis in original)).  As to indirect theories of
infringement, the Fourth Circuit has stated:

> Under a theory of contributory infringement, one who,
> with knowledge of the infringing activity, induces,
> causes or materially contributes to the infringing
> conduct of another is liable for the infringement,
> too . . . .  Under a theory of vicarious liability, a
> defendant who has the right and ability to supervise the
> infringing activity and also has a direct financial
> interest in such activities is similarly liable.

CoStar Grp., 373 F.3d at 550 (quoting Gershwin Publ'g Corp. v.
Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971))
(internal quotation marks omitted).

Under this scope of potential liability for copyright
infringement, it is apparent that Plaintiffs have pleaded
sufficient facts to state a claim against the individual
Defendants.  Plaintiffs allege that Lejarza was the only individual
authorized to access the copyrighted Test Prep Materials and
infringed on Plaintiffs' copyright when she personally shared the
Test Prep Materials with others and used them in workshops that
she herself taught.  Plaintiffs also allege that Penn is an owner
of both Compliance Trainings and HR Consulting and "takes an active
role in [their] management and business." (Doc. 1 at 20-21.)  They
further allege that Penn profits off the infringing activity.
(Id.)  Viewed in the light most favorable to Plaintiffs, these
allegations are sufficient to plausibly claim that Lejarza
directly infringed on Plaintiffs' rights under the Copyright Act

and that Penn may be liable under an indirect theory of infringement.  See Bradshaw v. Am. Inst. for History Educ., No. 12-1367(RBK/KMW), 2013 WL 1007219, *5 (D.N.J. Mar. 13, 2013) (finding it possible for an individual to be held personally liable for copyright infringement despite his status as a corporate employee); see also Lauratex Textile Corp. v. Allton Knitting Mills, Inc., 519 F. Supp. 730, 733 (S.D.N.Y. 1981) ("Where an individual directly causes a corporate defendant to infringe and personally participates in the acts constituting the infringement, he is jointly and severally liable for the infringement."). Therefore, Defendants' motion to dismiss the copyright infringement claim against these individual Defendants will be denied.

### C. Preemption

Plaintiffs allege that Defendants infringed on their common law copyright and engaged in unfair or deceptive trade practices under the North Carolina UDTPA and engaged in unfair competition under the Lanham Act, 15 U.S.C. § 1125.  They further allege that Lejarza breached her contract with Distinctive HR.  Defendants move to dismiss, claiming that each of these claims is preempted by the Copyright Act.  Plaintiffs oppose this motion.

By aid of the Supremacy Clause of the United States Constitution, the Copyright Act preempts all state law rights that are "equivalent" to rights under federal copyright law.  17 U.S.C.

§ 301(a).  In passing the Copyright Act, "Congress precluded state-law actions to enforce rights protected by federal copyright law in the clearest and most unequivocal language possible, so as to avoid the development of any vague borderline areas between State and Federal protection."  OpenRisk, LLC, v. Microstrategy Servs. Corp., 876 F.3d 518, 523 (4th Cir. 2017) (internal quotation marks and citation omitted).  Section 301(a) of the Copyright Act provides:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by this title . . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).  Thus, § 301 "sets up a two-prong inquiry to determine when a state law claim is preempted."  United States ex rel. Berge v. Bd. of Tr., 104 F.3d 1453, 1463 (4th Cir. 1997).  Courts must consider "(1) whether the claim 'falls within the subject matter of copyright' and (2) whether the claim 'protects rights that are equivalent to any of the exclusive rights of a federal copyright.'"  Tire Eng'g and Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 309 (4th Cir. 2012) (quoting Carson v. Dynegy, Inc., 344 F.3d 446, 456 (5th Cir. 2003)).  "[B]oth prongs of [this] two-factor test must be satisfied for preemption to occur" id., and the "shadow actually cast by the

11

Act's preemption is notably broader than the wing of its protection," Berge, 104 F.3d at 1463.

Defendants do not challenge that Plaintiffs claims fall within the first prong, the subject matter of copyright. See 17 U.S.C. §§ 102 (defining subject matter of copyright), 103 (defining copyright for compilations and derivative works). As to the second prong, § 106 of the Copyright Act grants a copyright owner the exclusive right to "(1) reproduce the work, (2) prepare derivative works based on the work, (3) distribute copies of the work, (4) perform the work publicly, and (5) display the work publicly." Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 659 (4th Cir. 1993). To determine if the equivalency requirement is satisfied, the Fourth Circuit applies the "extra element" test:

> State-law claims that infringe one of the exclusive rights contained in § 106 are preempted by § 301(a) if the right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights . . . . However, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, . . . there is no preemption, provided that the extra element changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim.

Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229-30 (4th Cir. 1993) (internal quotation marks and citations omitted). "In short, the Copyright Act preempts state law claims that lack an extra element which would make them *qualitatively* different from a

12

copyright infringement claim." <u>Pan-Am. Prods. Holdings, LLC v.</u> <u>R.T.G. Furniture Corp.</u>, 825 F. Supp. 2d 664, 691 (M.D.N.C. 2011) (internal quotation marks and citations omitted).

In applying the "extra element" test, the Fourth Circuit has cautioned that "[t]o determine whether a particular cause of action involves rights equivalent to those set forth in § 106, the elements of the causes of action should be compared, not the facts pled to prove them." <u>Trandes Corp.</u>, 996 F.2d at 659. However, where the elements require broad misconduct, such as an "unfair" or "deceptive" trade practice, the court must necessarily examine the allegations of the underlying claim to ascertain whether the nature of the claim differs qualitatively from a Copyright Act claim. <u>See, e.g.</u>, <u>Pan-Am. Prods.</u>, 825 F. Supp. 2d at 692 (quoting <u>Rutledge v. High Point Reg'l Health Sys.</u>, 558 F. Supp. 2d 611, 618 (M.D.N.C. 2008)).

### 1. Common Law Copyright Infringement

Plaintiffs plead that in addition to the federal copyright protection their Test Prep Materials enjoy under 17 U.S.C. §§ 106 and 501, Plaintiffs also have a common law copyright that Defendants have infringed. (Doc. 1 at 28-29.) Plaintiffs do not explain, either in the complaint or their briefing, the nature of the common law protection they claim. Defendants argue that this claim simply mirrors Plaintiffs' copyright claim and is preempted. (Doc. 13 at 9.) Defendants also note that Plaintiffs bring this

claim in the alternative and argue that if the copyright infringement claim survives, the common law copyright infringement claim should be dismissed. (Id. at ¶¶ 205-211.) Plaintiffs disagree, arguing, without explication, only that the federal rules permit them to plead in the alternative. (Doc. 17 at 3-4.)

The federal rules do permit Plaintiffs to state claims in the alternative, regardless of whether those claims are consistent. Fed. R. Civ. P. 8(d)(2)-(3). But Plaintiffs have not met their burden under Local Rule 7.2 to provide an argument as to the merit of their claim. L.R. 7.2(a)(4) (requiring briefs to contain argument, with reference to all statutes, rules, and authorities relied upon). In the absence of any explanation, the court nevertheless has the obligation to determine whether the motion to dismiss is merited. See Local Rule 7.3(k); Gardendance, Inc. v. Woodstock Copperworks, Ltd., 230 F.R.D. 438, 449 (M.D.N.C. 2005).

Defendants are correct that Plaintiffs' common law claim is preempted by the Copyright Act. The common law claim has at its core the same allegedly copyrighted materials that make up Plaintiffs' statutory copyright infringement claim and plainly falls within the scope of copyright. Plaintiffs claim common law copyright protection over "all of the collective and individual components of the Test Prep Materials." (Doc. 1 ¶ 34.) While these components, collectively and individually, could contain uncopyrightable material, Plaintiffs fail to explain how they are

14

not all related to Plaintiffs' test prep content and therefore fall within the scope of copyright. Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir. 2012) ("[W]orks may fall within the subject matter of copyright, and thus be subject to preemption, even if they contain material that is uncopyrightable under section 102 [of the Copyright Act].")； Berge, 104 F.3d at 1463 ("[S]cope and protection are not synonymous. Moreover, the shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection."). See Urbont v. Sony Music Entm't., 831 F.3d 80, 94–95 (2d Cir. 2016) (affirming district court's dismissal of common law copyright infringement claim on preemption grounds).

Therefore, Defendants' motion to dismiss Plaintiffs' common law copyright claim will be granted, but without prejudice because Plaintiffs have defaulted on providing any substantive argument.

### 2. Breach of Contract

Plaintiffs allege that they contracted with Lejarza for her purchase of an individual license to Defendants' online self-study course. (Doc. 1 at 24-25.) Lejarza allegedly breached the contract by allowing more than one person to access Plaintiffs' online system, used copyrighted content from the online system in her own study courses, shared her login information with others, and provided Test Prep Materials to third parties. (Id. at 25.) Defendants move to dismiss this claim, arguing that it is preempted

15

by the Copyright Act. They argue that each alleged breach is equivalent to a right protected by the Copyright Act and is therefore preempted. (Doc. 13 at 7-9.) Plaintiffs' one-line response is: "Beyond what is stated in Plaintiffs' Complaint, Plaintiffs make no argument towards whether or not Plaintiffs' claim for Breach of Contract is preempted by the Copyright Act." (Doc. 17 at 6.)

Here, too, Plaintiffs have failed to provide a substantive response to Defendants' motion, in violation of Local Rule 7.2(a)(4). It is not the job of the court to become an advocate for a non-responding party under such circumstances. Emrich v. Colvin, 90 F. Supp. 3d 480, 486 (M.D.N.C. 2015) (warning that a party should not expect the court to do the work it elected not to do). However, as noted above, the court must nevertheless determine whether the motion to dismiss has merit. See Local Rule 7.3(k); Gardendance, Inc., 230 F.R.D. at 449.

Plaintiffs' contract claim is based on Lejarza's allegedly improper actions as they relate to Plaintiffs' copyrighted material and is within the scope of copyright. To complete the preemption analysis, the court must apply the "extra element" test to determine whether the rights protected under a breach of contract claim in North Carolina are equivalent to the rights protected under the Copyright Act. To establish a breach of contract under North Carolina law, a plaintiff must show the

existence of a valid contract and a breach of that contract.  Long
v. Long, 588 S.E.2d 1, 4 (N.C. Ct. App. 2003).  "Although the vast
majority of contract claims will not be preempted under the
Copyright Act, courts must examine the precise contract right being
asserted."  Pan-Am Prods., 825 F. Supp. 2d at 694.  Where the
alleged acts supporting a breach of contract claim are equivalent
to rights protected under § 106 of the Copyright Act, the breach
of contract claim will be preempted.  See Madison River Mgmt. Co.
v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 444 (M.D.N.C.
2005) (finding plaintiff's breach of contract claims preempted
because they all "emanate[d] from the alleged wrongful
reproduction and distribution of" copyrighted work.)

In the present case, some of Plaintiffs' breach of contract
allegations appear to be equivalent to rights protected under the
Copyright Act.  Section 106 grants copyright holders the exclusive
right to reproduce copyrighted material, distribute copies of that
material, and display or authorize the display of that material
publicly.  17 U.S.C. § 106.  By allegedly using Plaintiffs' content
in her own materials, Lejarza impermissibly reproduced the Test
Prep Materials and displayed them publicly.  Plaintiffs'
allegation that Lejarza provided portions of the Test Prep
Materials to others is equivalent to a violation of Plaintiffs'
exclusive right to distribute copies of their work.  By sharing
her login information and allowing others to access the online

17

course, Lejarza made the self-study course available to others and distributed access to the copyrighted material. However, Plaintiffs also allege that purchasers of their products receive a notice stating, in relevant part, "LMS access is for a single-user and is NOT transferrable or to be shared with others." (Doc. 1 ¶ 69.) The notice further states that the purchased materials "may not, in whole or in part, be copied, shared, or reproduced by any means for any reason without [Distinctive HR's] prior written consent." (Id.) The Copyright Act allows for the fair use of copyrighted material, 17 U.S.C. § 107, but the provisions that Lejarza allegedly agreed to when purchasing Plaintiffs' products provide a private standard for acceptable use. A breach of contract claim arising from "private law governing fair use . . . makes the claim qualitatively different from a simple copyright case, in which there is no 'private law' defining what is and is not fair use." See Lowry's Reports, Inc. v. Legg Mason, Inc., 271 F. Supp. 2d 737, 756-57 (D. Md. 2003) (citation omitted).

No party has provided the underlying contract between Lejarza and Plaintiffs, and the burden is on Defendants to show that all provisions of the contract alleged in Plaintiffs' complaint are preempted. Defendants have failed to do so. Due to inadequate briefing, the court is unable to decide the motion without undertaking the work for the parties. Because justice is invoked, not dispensed, Defendants' motion to dismiss will be denied without

prejudice.

### 3. North Carolina UDTPA

Plaintiffs contend that Defendants engaged in unfair and deceptive trade practices in violation of the UDTPA, N.C. Gen. Stat. § 75-1.1 et seq. (Doc. 1 at 29-31). Defendants move to dismiss, arguing that Plaintiffs' UDTPA claim is merely a copyright infringement claim in disguise. (Doc. 13 at 11.) They further argue that even if the claim is not preempted by the Copyright Act, Plaintiffs have failed to allege sufficient facts to state a claim under the UDTPA. (Id. at 12.) Plaintiffs do not dispute that the relevant works are within the subject matter of copyright but argue only that preemption fails because their UDTPA claim alleges "palming off" and therefore involves an "extra element" that makes it qualitatively different from a copyright infringement claim. (Doc. 17 at 9-10.)

"In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). While it may appear that a UDTPA claim does not require an "extra element" beyond that required to show copyright infringement, "it is possible for a claim under the UDTPA 'to rest on conduct apart from that comprising the Copyright Act claim.'" Andrews v.

_Daughtry_, No. 1:12-cv-00441, 2013 WL 664564, at *11 (M.D.N.C. Feb. 22, 2013) (quoting _Pan-Am. Prods._, 825 F. Supp. 2d at 698). "Common examples of extra elements in unfair competition claims that typically avoid preemption include breach of fiduciary duty, breach of a confidential relationship, and palming off of the defendant's products as those of the plaintiff's." _Rutledge_, 558 F. Supp. 2d at 617 (internal quotation marks and citation omitted). Additional elements that are not preempted include UDTPA claims founded on misrepresentation or deception. _Innovative Med. Prods., Inc. v. Felmet_, 472 F. Supp. 2d 678, 683 (M.D.N.C. 2006). In the end, what constitutes unfairness or deception to support a UDTPA claim "must rest on sufficient alleged misconduct separate from, and not controlled by, the Copyright Act, in order to survive." _Rutledge_, 558 F. Supp. 2d at 620.

Here, the allegations underlying Plaintiffs' UDTPA claim are all equivalent to rights protected under the Copyright Act. Plaintiffs argue that they allege "palming off" as an extra element, but their complaint does not bear this out. "'Passing off,' also known as 'palming off,' occurs when a defendant misrepresents its products as those of the _plaintiff_." _Rutledge_, 558 F. Supp. 2d at 620 (citing _Felmet_, 472 F. Supp. 2d at 683-84). "Reverse passing off," also known as "reverse palming off," occurs when either (1) "the wrong doer removes the name or trademark on another party's product and sells that product under a name chosen

by the wrongdoer" or (2) "the wrongdoer . . . removes or otherwise obliterates the name of the manufacturer or source and sells the product in an unbranded state." Id. (citing Scheduled Airlines Traffic Offices, Inc. v. Objective, Inc., 180 F.3d 583, 591 n.4 (4th Cir. 1999)) (internal quotation marks omitted). Whereas palming off has an extra element that distinguishes a UDTPA claim from one of copyright infringement, the same is not true for reverse palming off, and the Copyright Act routinely preempts the latter brought under state unfair and deceptive trade practice statutes. Id. at 621 (citing cases and noting that the North Carolina UDTPA "merely duplicates the copyright owner's exclusive rights to reproduce and distribute" under 17 U.S.C. § 106(1)(3)).

Nowhere in their complaint do Plaintiffs allege that Defendants are promoting their own original material as that of Siler or Distinctive HR. Rather, they allege that Defendants are selling Plaintiffs' copyrighted material as Defendants' own or without credit to Plaintiffs. This is classic reverse palming off, which is preempted by the Copyright Act. Defendants' motion to dismiss as to this claim will therefore be granted.

### 4. Unfair Competition

Plaintiffs allege that Defendants have engaged in unfair competition under the Lanham Act, 15 U.S.C. § 1125. They contend that Defendants' unauthorized use of copyrighted materials in commerce created a false association between Plaintiffs and

Defendants and is likely to cause both confusion to customers and harm to Plaintiffs. (Doc. 1 at 26-27.) Defendants move to dismiss, arguing that this claim "is nothing more than a copyright claim in disguise" and is "preempted by federal statute,"[3] citing Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 24 (2001), for the proposition that unfair competition protections should not be overextended to cover traditional copyright claims. (Doc. 13 at 6.) Plaintiffs contend they have pleaded sufficient facts to support an unfair competition claim. (Doc. 17 at 7-8.)

Section 301(d) of the Copyright Act states "[n]othing in this title annuls or limits any rights or remedies under any other Federal statute." Unfair competition through false association is addressed in § 43(a)(1) of the Lanham Act, which provides:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who

---

[3] Defendants' contention of preemption presumably refers to conflict preemption, as the Copyright Act does not preempt other federal laws. 17 U.S.C. 301(d). Preemption under the Supremacy Clause of the United States Constitution speaks to state laws. Anderson v. Sara Lee Corp., 508 F.3d 181, 191 (4th Cir. 2007) (describing "longstanding principles" guiding preemption of state law under the Supremacy Clause).

> believes that he or she is or is likely to be damaged by
> such an act.

15 U.S.C. § 1125(a)(1).  "Subsection A, which creates liability
for statements as to 'affiliation, connection, or association' of
goods, describes the cause of action known as 'false association.'"
Belmora, LLC v. Bayer Consumer Care AG, 819 F.3d 697, 706 (4th
Cir. 2016).  While the statute creates a cause of action for any
person likely to be damaged by acts of unfair competition, the
Supreme Court, in Lexmark Int'l, Inc. v. Static Control Components,
Inc., 572 U.S. 118 (2014), concluded that "§ 43(a)'s broad
authorization – permitting suit by any person who believes that he
or she is or is likely to be damaged – should not be taken literally
to reach the limits of Article III standing, but is framed by two
background principles, which may overlap."  Belmora, 819 F.3d at
707 (4th Cir. 2016) (citing Lexmark, 572 U.S. at 129) (internal
quotation marks omitted).  Under the first principle, "we presume
that a statutory cause of action extends only to plaintiffs whose
interests 'fall within the zone of interests protected by the law
invoked.'"  Lexmark, 572 U.S. at 129 (quoting Allen v. Wright, 468
U.S. 737, 751 (1984)).  To determine this "zone of interest," the
Lanham Act's purpose statement is instructive:

> The intent of this chapter is to regulate commerce within
> the control of Congress by making actionable the
> deceptive and misleading use of marks in such commerce;
> to protect registered marks used in such commerce from
> interference by State, or territorial legislation; to
> protect persons engaged in such commerce

> against unfair competition; to prevent fraud and
> deception in such commerce by the use of reproductions,
> copies, counterfeits, or colorable imitations of
> registered marks; and to provide rights and remedies
> stipulated by treaties and conventions respecting
> trademarks, trade names, and unfair competition entered
> into between the United States and foreign nations.

15 U.S.C. § 1127. Most of these enumerated principles are relevant to false association cases. <u>Lexmark</u>, 572 U.S. at 131. "The scope of the zone of interests is not 'especially demanding,' and the plaintiff receives the 'benefit of any doubt.'" <u>Belmora</u>, 819 F.3d at 707 (quoting <u>Lexmark</u>, 572 U.S. at 130). Under the second principle, the Court stated, "we generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute," and "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception." <u>Lexmark</u>, 572 U.S. at 132–33.

Plaintiffs have alleged that Defendants used the Test Prep Materials "without attribution and as though they were the original works of Defendants,"[4] that Defendants' unauthorized use of the Test Prep Materials is a "false or misleading representation of fact or false or misleading description of fact, or a false designation of origin," and that Defendants' unauthorized usage creates an implied endorsement by Plaintiff. (Doc. 1 at 26.) They

---

[4] As noted, Plaintiffs are pleading facts to support a claim for "reverse passing off" as unfair competition. <u>See</u> <u>Belmora</u>, 819 F.3d at 710.

further allege that these acts were in commerce and are likely to cause confusion. (Id. at 26-27.)

A reverse passing off claim under the Lanham Act requires the plaintiff to prove "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc., 618 F.3d 417, 438 (4th Cir. 2010). In determining origin, the Supreme Court has held that "[origin] refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." Dastar, 539 U.S. at 37. In the present case, Plaintiffs have alleged that Defendants are using Plaintiffs' Test Prep Materials in their workshops and on-demand materials without authorization and without attribution to Plaintiffs "as though they were the original works of Defendants." (Doc. 1 at 26-27.) Taking Plaintiffs' allegations as true, as the court must at this stage, Defendants are the creators of the workshops and on-demand materials that they distribute to customers. However, under Dastar, because Defendants are the origin of their own prep materials, which incorporate Plaintiffs' copyrighted content, Plaintiffs cannot prove that the work at issue originated with Plaintiffs, nor can

they plausibly state a claim for false designation of origin.  See
Vogel v. Wolters Kluwer Health, Inc., 630 F. Supp. 2d 585, 590-91
(M.D.N.C. 2008) (applying Dastar).

Plaintiffs have also alleged that Defendants' unauthorized
usage creates a false endorsement.  "A claim of false endorsement
arises when the name, symbol, or other identifying likeliness is
'used in such a way as to deceive the public into believing that
[the plaintiff] endorsed, sponsored, or approved of the
defendant's product.'"  First Date Merch. Servs. Corp. v.
SecurityMetrics, Inc., No. RDB-12-2568, 2013 WL 6234598, *7 (D.
Md. Nov. 13, 2013) (quoting Mktg. Products Mgmt., LLC v.
Healthandbeautydirect.com, Inc., 333 F. Supp. 2d 418, 430 (D. Md.
2004)).  In an action for false endorsement under the Lanham Act,
the plaintiff "must prove the likelihood of consumer confusion as
to the origin, approval or endorsement of the product."  Mktg.
Products Mgmt., 333 F. Supp. 2d at 430 (citing Waits v. Frito-Lay,
Inc., 978 F.2d 1093, 1109 n.9 (9th Cir. 1992)).  Plaintiffs have
alleged that Defendants' use of the Test Prep Materials "is likely
to cause confusion, or to cause mistake, or to deceive as to the
affiliation, connection, or association of Defendants with
Plaintiffs, or as to the origin, sponsorship, or approval of
Defendants goods, services, or commercial activities by
Plaintiff." (Doc. 1 ¶ 200.)  Taking these allegations as true, as
the court must at this preliminary stage, Plaintiffs have pleaded

26

sufficient facts to state a claim for false endorsement, and the motion to dismiss on this basis will be denied. See AvePoint, Inc. v. Power Tools, Inc., 981 F. Supp. 2d 496, 516-17 (W.D. Va. 2013) (denying defendant's motion to dismiss where plaintiff adequately pled the likelihood of confusion).

Plaintiffs also clearly fall within the dual principles outlining who can bring suit for unfair competition under the Lanham Act. The test to fall within the zone of interest is not "especially demanding," and Plaintiffs receive the "benefit of any doubt." Belmora, 819 F.3d at 707 (internal quotation marks and citation omitted). Plaintiffs allege facts indicating they are "persons engaged in . . . commerce" and are pursuing this lawsuit against Defendants to protect "against unfair competition." 15 U.S.C. § 1157. Because their claim falls within the Lanham Act's purpose statement, Plaintiffs are within the zone of interest. See Farm Fresh Direct Direct By a Cut Above, LLC v. Downey, No. ELH-17-1760, 2017 WL 4865481, *9 (D. Md. Oct. 26, 2017) ("Because plaintiff has sufficiently alleged facts showing its claim furthers an enumerated purpose of § 1125(a), it has also met the zone of interests test."). Plaintiffs have also sufficiently alleged harm "proximately caused by [Defendants'] violations of the [false association] statute." Belmora, 819 F.3d at 711. Plaintiffs have alleged "economic . . . injury flowing directly from the deception wrought by [Defendants'] conduct," id. at 712,

specifically that customers are less likely to purchase their product if they can buy it alongside other materials at Defendants' workshops. (Doc. 1 at 27.)

Plaintiffs have therefore put forth sufficient allegations to state a claim for unfair competition by false endorsement under the Lanham Act and are in the category of individuals meant to have a remedy for Defendants' conduct. Defendants' motion to dismiss will therefore be denied.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' motion to dismiss (Doc. 11) is GRANTED IN PART and DENIED IN PART as follows: the motion to dismiss as to Plaintiffs' claims for common law copyright infringement (Count IV) is GRANTED, and those claims are DISMISSED WITHOUT PREJUDICE; the motion to dismiss as to Plaintiffs' claims for unfair and deceptive trade practices (Count V) and unfair competition based on false designation of origin (Count III) is GRANTED, and those claims are DISMISSED; the motion is otherwise DENIED.

/s/   Thomas D. Schroeder
United States District Judge

November 21, 2019